IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ERIC DAVIS | No. 20-cr-10136-RGS |

**<u>DEFENDANT'S SENTENCING MEMORANDUM</u>**

Defendant, Eric Davis, respectfully submits this memorandum, his letter to the Court (Exhibit 1) and other letters of support (Exhibit 2) to assist the Court with sentencing. For the reasons articulated below, we submit that a sentence of imprisonment for **105 months**, followed by four years of supervised release (with a recommendation to participate in CARE) is sufficient, but not greater than necessary, to accomplish the purposes of sentencing set forth in 18 U.S.C. § 3553(a). This represents a sentence at the **high** end of the applicable Guideline Sentence Range and is the low end of the Rule 11(c)(1)(C) range contained in the plea agreement.

**<u>Background</u>**[1]

Mr. Davis is 37 years old. Born in Boston and raised in Dorchester, he has lived in the metro area for his entire life. His parents had a history of substance abuse and domestic violence. His mother died when he was seven years old and he never had a close relationship with his father. His maternal grandparents took in Mr. Davis and his sister but Mr. Davis began to act out around age 10. He was frequently taken out of the home by DCF and placed in foster care.

Introduced to alcohol at age 10, Mr. Davis began to drink regularly by age 12 and

---

[1] The narrative in this section is a very limited summary based on more extensive social history contained in the PSR and discussed in the letter from Mr. Davis to the Court.

acknowledges that alcohol consumption remains a serious problem for him to this day. He struggled in school and was prescribed Ritalin other medications for his attention deficit, depression, anger, and anxiety. He has continued to engage constructively in mental health treatment and counseling through his stints of incarceration and in the community. He earned his GED in 2002.

When released from his most recent incarceration in 2016, it appeared that Mr. Davis was making significant strides toward leading a constructive, law-abiding life. He worked consistently in a series of jobs despite intermittent medical issues, most recently from December 2018 to March 2020 at Diversified Automotive in Charlestown, until he was laid off due to the pandemic.  He obtained full custody of his son, now 13, and also developed strong relationships with his young twin daughters, who are now 3. He also assisted in starting and running a non-profit organization called T.E.A.R.S. (Teaching Every Adolescent Real Solutions). Against that backdrop, his lapse back into criminal activity is tragic, although he recognizes he has only himself to blame.

## Argument

We submit that in the circumstances of this case, the proposed sentence of 105 months imprisonment followed by four years of supervised release, is "sufficient but not greater than necessary, to comply with the purposes of sentencing."  18 U.S.C. § 3553(a).

The Court is required to compute the Guideline Sentencing Range ("GSR") as a "starting point and the initial benchmark." *Gall v. United States,* 128 S.Ct. 586, 596 (2007).  Here, Probation contends that the GSR is 100-125 months (level 25, CHC V), while Mr. Davis contends that the correctly-calculated range is 84-105 months (level 25, CHC IV).  Whatever calculation the Court may eventually adopt, the Guidelines are not the sole, nor even the first

among the factors that Congress has commanded the courts to apply in section 3553(a). The Court "may not presume that the Guidelines range is reasonable" and must "make an individualized assessment based on the facts presented." *Id*. at 596-7. Indeed, "the Guidelines are only one of the factors to consider . . . and 3553(a) directs the judge to consider sentences other than imprisonment." *Id*. at 602 (emphasis added). The Supreme Court later emphasized again that the "Guidelines are not only not mandatory on sentencing courts; they are also not to be presumed reasonable." *Nelson v. United States*, 129 S.Ct. 890, 892 (2009) (emphasis in original).

Thus, district courts are now permitted, indeed, directed to consider whether the advisory guidelines would result in a sentence that is unreasonably high. *See United States v. Kimbrough*, 128 S.Ct. 558, 575 (2007); *United States v. Boardman*, 528 F.3d 86 (1st Cir. 2008); *United States v. Martin*, 520 F.3d 87, 93-94 (1st Cir. 1998).

The First Circuit elaborated on the meaning and breadth of the so-called parsimony principle in *United States v. Yonathan Rodriguez*, 527 F.3d 221 (1st Cir. 2008). In *Rodriguez*, the First Circuit stressed that the Supreme Court ruling in *Kimbrough* requires a "more holistic inquiry" and that "section 3553(a) is more than a laundry list of discrete sentencing factors; it is, rather, a tapestry of factors, through which runs the thread of an overarching principle." *Id*. at 228. That overarching principle is to "impose a sentence sufficient but not greater than necessary." *Id*. In reaching a decision on what constitutes an appropriate sentence, the district court should "consider all the relevant factors" and "construct a sentence that is *minimally sufficient* to achieve the broad goals of sentencing." *Id*. (emphasis added).

### A. The Properly-Calculated GSR is 84-105 months (level 25, CHC IV).

There is no dispute that the Total Offense Level is 25. However, Probation contends that Mr. Davis has 11 criminal history points, placing him in Category V. Probation's calculation

includes an erroneous assignment of two points for "committing the instant offense while under a criminal justice sentence." U.S.S.G. § 4A1.1(d).

Mr. Davis completed his state probation in July 2019. The earliest identified offense conduct involving Mr. Davis did not occur until August 2019. Probation nevertheless maintains that the additional 2 points are warranted since the indictment and superseding information to which Mr. Davis pled guilty state that the conspiracy began in June 2019. However, Mr. Davis cannot be liable for activities of a multi-participant conspiracy before there is any evidence to suggest he had joined. His guilty plea does not change that. As the Seventh Circuit explained:

> With respect to the timing of his participation in the scheme, [the defendant's] admission in the agreement tracked the language of the indictment. He admitted that the scheme existed for four years, and he admitted that he was a part of the scheme. He did not admit that he was part of the scheme for the entire four years, and he was not asked whether he was. Again, a guilty plea admits only the essential elements of the offense, and dates are not elements of the offense.

*United States v. White*, 883 F.3d 983, 989-90 (7th Cir. 2018).

Accordingly, Mr. Davis has 9 criminal history points, placing him Category IV. The properly-calculated GSR is therefore 84-105 months.

**B. The Proposed Sentence Will Provide Just Punishment.**

The proposed sentence represents a substantial penalty that adequately reflects the seriousness of the offenses of conviction, will promote respect for the law, and provide just punishment as required by section 3553(a)(2)(A). While it is easy to become inured to enormous sentences in the federal system, 105 months is a very substantial sentence. It is 50 percent greater than the prior 71-month federal sentence Mr. Davis served. While one could argue that an additional upward "ratchet" is warranted in light of the prior federal case, courts have recognized that even successive sentences of similar or just slightly increased length have an enhanced or leveraged effect. *See, e.g., United States v. Regaldo-Hernandez*, No. 07-cr-0227-

DPW, DE 20 (Sentencing Tr. at 24-25) (imposing 30-month sentence, identical to previous federal sentence) ("The defendant was, of course, sentenced to precisely thirty months committed the last time, and one can say:  That wasn't enough, but I think there is, like a toxic impact, an accumulation of time which can have an accelerated or leveraged effect."); *United States v. Passanisi*, No. 10-cr-10666-DPW (imposing 40-month sentence, three months longer than prior federal sentence, where GSR was 77-96 months).

**C.  The Proposed Sentence Will Provide Sufficient Specific and General Deterrence.**

The proposed sentence will be more than sufficient to deter Mr. Davis from similar crimes in the future, as required by sections 3553(a)(2)(B) and (C).  The very fact of federal prosecution will also serve the interest in general deterrence that the government emphasizes.

There are no data to suggest that a longer sentence would have any marginally greater general deterrent effect. Indeed, research consistently has shown that "increases in the severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tonry, *Purposes and Functions of Sentencing*, 34 CRIME & JUST. 1, 28 (2006). "Three National Academy of Science panels . . .reached that conclusion, as has every major survey of the evidence." *Id*. see also Zvi D. Gabbay, *Exploring the Limits of the Restorative Justice Paradigm*, 8 CARDOZO J. CONFLICT RESOL. 421, 447-48 (2007) ("[C]ertainty of punishment is empirically known to be a far better deterrent than its severity.").

On the other hand, there is a substantial body of research that suggests "crime-reducing aspects of imprisonment are considerably negated by crime-enhancing ones." Todd Clear, *Backfire: When Incarceration Increase Crime, The Unintended Consequences of Incarceration*. (Vera Inst. 1996).

Moreover, Mr. Davis will be well into his 40s when he is released, and will be on federal supervision until he is nearly 50.  At that age, recidivism declines precipitously. *See, e.g.*, U.S.S.C., "The Effects of Aging on Recidivism Among Federal Offenders" (2017) at 23 (showing steady decline in recidivism with age, from 48 percent at age 25 to 22.3 percent at age 45 to 15.9 percent at age 50 to 12.2 percent at age 55)[2]; U.S.S.C., "Recidivism Among Federal Drug Trafficking Offenders" (2017) at A-14 (showing 15 percent reincarceration rate for powder cocaine trafficking offenders released from custody at age 41-50).[3]

### D. The Proposed Sentence Will Provide Any Needed Treatment.

Mr. Davis is not in need of treatment of the sort that a Bureau of Prisons placement would uniquely facilitate under section 3553(a)(2)(D).  Rather, the Probation Department is best equipped to ensure that Mr. Davis maintains a stable, law-abiding life.  In particular, Mr. Davis would be a good candidate for the CARE or program, given his longstanding issues with alcohol abuse. Ultimately, notwithstanding Mr. Davis' previous difficulties on supervised release, the prospect of a productive life after incarceration will rise or fall on his ability to comply with and benefit from Probation supervision.  The Court can address any future issue of compliance with appropriately-tailored and calibrated services and sanctions.

---

[2] Available at <https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf>.

[3] Available at <https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20170221_Recidivism-Drugs.pdf>.

## Conclusion

For the foregoing reasons, the Court should impose the proposed sentence. No fine should be imposed in light of the defendant's limited financial means.

Respectfully submitted,

ERIC DAVIS
by his attorney

*/s/ William Fick*
WILLIAM W. FICK, ESQ. (BBO # 650562)
FICK & MARX LLP
24 Federal Street, 4th Floor
Boston, MA 02110
(857) 321-8360
WFICK@FICKMARX.COM

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 7, 2021.

*/s/ William Fick*